2010 ME 35

**STATE of Maine**

v.

**Gerald W. GILMAN.**

Supreme Judicial Court of Maine.

Argued: Nov. 9, 2009.
Decided: April 13, 2010.

Andrew S. Robinson, Asst. Dist. Atty. (orally), Franklin County DA's Office, Farmington, ME, for the State of Maine.

Walter Hanstein III, Esq. (orally), Joyce, David & Hanstein, P.A., Farmington, ME, for Gerald W. Gilman.

Panel SAUFLEY, C.J., and
ALEXANDER, LEVY, SILVER, MEAD, and GORMAN, JJ.

MEAD, J.

[¶ 1]  The State of Maine appeals from a judgment of the Superior Court (Franklin County, *Murphy, J.*) denying its motion to correct the sentence that the court imposed on Gerald W. Gilman following his conviction at a bench trial for operating after habitual offender revocation (Class C), 29–A M.R.S. § 2557–A(2)(D)(2)(2008).[1] *See* M.R.Crim. P. 35(a).  The State contends that the court imposed an illegal sentence when it sentenced Gilman to less than the minimum mandatory two-year term of imprisonment required by the statute.  The court did so after finding that the statute as applied to Gilman violated article I, section 9 of the Maine Constitution, which requires that "all penalties and punishments shall be proportioned to the offense."  Me. Const. art. I, § 9.

■ [¶ 2]  Gilman cross-appeals, contending that, in addition to violating article I, section 9 of the Maine Constitution, the mandatory sentencing provision also violated his equal protection and due process rights.[2]  Additionally, he argues that the

1. The statute provided:

> **D.**  A person is guilty of a Class C crime if the person [commits the crime of operating after habitual offender revocation] and:
> . . . .
> (2) The person has 3 or more convictions for violating section 2411 [Criminal OUI] or former Title 29, section 1312–B within the previous 10 years.
> The minimum fine for a Class C crime under this paragraph is $1,000 and the minimum term of imprisonment is 2 years, neither of which may be suspended by the court.

29–A M.R.S. § 2557–A(2)(D) (2008).  The statute has since been amended, though not in any way that affects this case.  P.L. 2009, ch. 54, § 5 (effective April 22, 2009) (codified at 29–A M.R.S. § 2557–A(2)(D)(2) (2009)).

2. Gilman does not specify whether his due process and equal protection claims are grounded in the United States or Maine Con-

court erred in admitting a certified record from the Secretary of State declaring him to be a habitual offender, because doing so violated his constitutional right to confront witnesses against him as articulated in *Crawford v. Washington*, 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004), and its progeny.

[¶ 3] The State's appeal is accompanied by the written approval of the Attorney General as required by 15 M.R.S. § 2115-A(2-B), (5) (2009) and M.R.App. P. 21(b). Because we agree with the State's contention that the sentence imposed on Gilman was illegal, and find no violation of Gilman's constitutional rights, we vacate only the sentence and remand for resentencing.

## I. BACKGROUND

[¶ 4] The facts are not in dispute. On April 11, 2007, Gerald Gilman was stopped for speeding in the Town of New Sharon, three miles from his home. He had not been drinking. Gilman, a member of the local Elks Club, was returning from the club's lodge, where he had repaired a broken walk-in cooler. Gilman admitted to the officer that his driver's license was suspended, and at trial he testified that he knew he was suspended for an operating under the influence (OUI) conviction. In fact, Gilman's license had been revoked as a result of multiple previous convictions, which included three convictions for OUI within the previous ten years. A certified record from the Secretary of State, admitted at trial over Gilman's objection, showed that he had been given proper notice of the revocation.

[¶ 5] Gilman was indicted for operating after revocation (Class C). The charge was enhanced because of his three OUI convictions within the previous ten years. 29-A M.R.S. § 2557-A(2)(D)(2). Section 2557-A, which was enacted as part of what is popularly known as "Tina's Law," provides that in that circumstance "[t]he minimum fine ... is $1,000 and the minimum term of imprisonment is 2 years, neither of which may be suspended by the court." 29-A M.R.S. § 2557-A(2)(D); P.L. 2005, ch. 606, § A-11 (effective Aug. 23, 2006).

[¶ 6] Gilman moved to dismiss the allegation of the aggravating factor of his prior OUI convictions as a violation of his equal protection guarantees. Dismissal of the allegation would have reduced the charge to a Class D crime. *See* 29-A M.R.S. § 2557-A(2)(A) (2008).[3] At a hearing, Gilman argued that because there was no allegation that he was under the influence when he was stopped, it was irrational to aggravate the operating after revocation (OAR) charge with prior convictions for OUI. The Superior Court (*Jabar, J.*) denied the motion.

[¶ 7] At a jury-waived trial held on February 11, 2008, Gilman objected that his rights under the Confrontation Clause would be violated by the admission of a certificate issued by the Secretary of State under seal declaring that (1) his right to drive was under revocation when he was stopped, (2) he had proper notice of the revocation, and (3) his driving record included three OUI convictions within the previous ten years. The court (*Murphy, J.*) overruled the objection, denied Gilman's motion for a judgment of acquittal, and took the ultimate issue of whether the State had met its burden of proof under advisement. Gilman then filed a written

---

stitutions. In any event, those protections are coextensive. *See Conlogue v. Conlogue*, 2006 ME 12, ¶ 6, 890 A.2d 691, 694 (citing cases).

3. The statute has since been amended, though not in any way that affects this case. P.L. 2009, ch. 54, § 5 (effective April 22, 2009) (codified at 29-A M.R.S. § 2557-A(2)(A) (2009)).

argument asking the court to revisit its earlier rejection of his equal protection argument, and asserting that the mandatory two-year sentence that would result if he were convicted would violate article I, section 9 of the Maine Constitution. The court heard argument and took the issues under advisement.

[¶ 8] On September 8, the court issued a written decision finding Gilman guilty beyond a reasonable doubt. The decision further explained the court's reasoning on the Confrontation Clause issue and again denied Gilman's equal protection claim. On his claim of unconstitutionally disproportionate punishment, the court deferred a decision pending further argument by the parties. Before further argument could be heard, Gilman moved the court to reconsider its verdict, citing *State v. Stade*, 683 A.2d 164 (Me.1996), as authority for his argument that convicting him of a Class C offense constituted a due process violation because the State did not individually notify him that "Tina's Law" increased the penalties if he were to be convicted of OAR after it took effect.

[¶ 9] On October 27, the court heard argument on Gilman's due process claim and denied it. It then heard testimony relevant to the disproportionate punishment issue and sentencing from four witnesses: another member of the Elks Club, a psychiatrist who treated Gilman through the United States Department of Veterans Affairs, Gilman's sister, and Gilman himself. At the conclusion of the hearing, the court took the disproportionate punishment issue and the sentence under advisement.

[¶ 10] On November 17, the court issued written findings and conclusions:

This Court concludes, after consideration of the characteristics of Mr. Gilman, as well as the manner in which this sentence would be carried out, that imposition of a two-year mandatory minimum sentence would be greatly disproportionate to the offense, and also concludes that it would offend prevailing notions of decency.

. . . .

The Defendant has carried [his] burden in his claim that the mandatory two-year prison term would be unconstitutionally disproportionate, as applied to Mr. Gilman.

[¶ 11] At a final hearing on December 11, the court conducted the statutorily required sentencing analysis on the Class C conviction and sentenced Gilman to fifteen months imprisonment, with all but ninety days suspended, two years of probation, 500 hours of community service, and a $1000 fine. *See* 17–A M.R.S. § 1252–C (2009). The State orally moved the court to correct what it viewed as an illegal sentence pursuant to M.R.Crim. P. 35(a);[4] the motion was denied orally and later in a written order. This appeal and cross-appeal followed.

## II. DISCUSSION

### A. Scope of Article I, Section 9

[¶ 12] Article I of the Maine Constitution is a declaration of rights enjoyed by Maine citizens. Section 9 sets limits on the State's power to punish: "Sanguinary laws shall not be passed; all penalties and punishments shall be proportioned to the offense; excessive bail shall not be required, nor excessive fines imposed, nor cruel nor unusual punishments inflicted." Me. Const. art. I, § 9.

4. The Rule provides: "On motion of the ... attorney for the state ... made within one year after a sentence is imposed, the justice or judge who imposed sentence may correct an illegal sentence or a sentence imposed in an illegal manner." M.R.Crim. P. 35(a).

[¶ 13]  The statute under which Gilman was convicted unambiguously required the Superior Court to impose an unsuspended prison sentence of at least two years.  29–A M.R.S. § 2557–A(2)(D).  Accordingly, the court's lesser sentence was facially illegal unless the court was correct in its two central rulings: (1) article I, section 9 requires that punishments be proportionate to the offense after considering the circumstances of the particular offender, not simply proportionate to the offense itself, and (2) because of Gilman's individual circumstances, the mandatory sentence was disproportionate to his offense, and therefore the statute is unconstitutional in this instance.[5]  Gilman's burden is significant, as "[o]ne challenging the constitutionality of a statute bears a heavy burden of proving unconstitutionality since all acts of the Legislature are presumed constitutional."  *State v. Vanassche,* 566 A.2d 1077, 1081 (Me.1989) (quotation marks omitted).  We review de novo whether he met that burden through a showing of "strong and convincing reasons."  *Town of Frye Island v. State,* 2008 ME 27, ¶ 13, 940 A.2d 1065, 1069.

[¶ 14]  Whether the Maine Constitution requires that punishments be proportionate to the offender, as well as the offense, has been an open question.  In discussing a closely related provision of section 9, we left it unanswered:

> Assuming, without deciding, that it may be possible in rare cases that a mandatory minimum sentence is cruel and unusual because of the characteristics of the individual or because of the manner in which the sentence is carried out, there was not enough information in this case for the [trial court to reach that conclusion].

*State v. Worthley,* 2003 ME 14, ¶ 7, 815 A.2d 375, 377 (footnote omitted).[6]

[¶ 15]  This case requires us to answer the question left open in *Worthley.*  For several reasons, we conclude that (1) section 9 requires only that a punishment be proportionate to the offense for which a person is convicted, (2) the two-year mandatory sentence prescribed by statute is proportionate to the offense that Gilman committed, and (3) the sentence imposed by the trial court was therefore illegal and

---

5. At oral argument, Gilman suggested that the minimum mandatory sentence for his offense must also be proportional in context, that is, it must be proportionate not only to his specific crime, but also to the sentences imposed by the Legislature for other crimes.  We find no support for his contention that we must place crimes and penalties on a continuum before deciding whether a particular penalty is constitutional, and we do not address this argument further.

6. Although the Maine Constitution, unlike the United States Constitution, delineates the protections against disproportionate punishments and cruel or unusual punishments separately, both the Supreme Court and this Court have understood them to be related.  *See Kennedy v. Louisiana,* 554 U.S. ——, 128 S.Ct. 2641, 171 L.Ed.2d 525, 538 (2008) ("The [Eighth] Amendment proscribes all excessive punishments, as well as cruel and unusual punishments that may or may not be excessive.... [T]he Eighth Amendment's protection ... flows from the basic precept of justice that punishment for [a] crime should be graduated and proportioned to [the] offense." (quotation marks omitted)); *State v. Worthley,* 2003 ME 14, ¶ 6, 815 A.2d 375, 376 ("In analyzing whether a sentence is cruel and unusual as applied, we look to whether the sentence is greatly disproportionate to the offense and whether it offends prevailing notions of decency."); *State v. Frye,* 390 A.2d 520, 521 (Me.1978) ("A mandatory sentence is not cruel and unusual punishment unless the sentence is greatly disproportionate to the offense or the punishment offends prevailing notions of decency"); Tinkle, *The Maine State Constitution: A Reference Guide* (1992) at 43 ("The interpretation of 'cruel or unusual punishment' also is informed by the requirement of proportionality.").

must be vacated. Accordingly, to the extent that *Worthley* suggested that it may be possible for a mandatory sentence to be unconstitutionally disproportionate under article I, section 9 solely because of an individual defendant's particular circumstances, we now hold that it is not possible.

[¶ 16] The plain language of section 9 requires that "punishments shall be proportioned *to the offense.*" Me. Const. art. I, § 9 (emphasis added). It says nothing about the individual offender. This is of primary importance because we have said:

> In interpreting our State Constitution, we look primarily to the language used. Because the same principles employed in the construction of statutory language hold true in the construction of a constitutional provision, we apply the plain language of the constitutional provision if the language is unambiguous.

*Voorhees v. Sagadahoc County,* 2006 ME 79, ¶ 6, 900 A.2d 733, 735–36 (citation omitted) (quotation marks omitted). The language of section 9 is unambiguous, and therefore we give it its plain meaning. *See Joyce v. State,* 2008 ME 108, ¶ 11, 951 A.2d 69, 72 (stating that "[i]t is a fundamental rule of statutory interpretation that words in a statute must be given their plain and ordinary meanings" (alteration in original) (quotation marks omitted)).

[¶ 17] Our prior decisions support this construction. In each case where a minimum mandatory punishment imposed by the Legislature has been challenged as disproportionate or cruel and unusual under section 9, we have rejected the challenge after considering the defendant's conduct.[7] Only in *Worthley* did we refer to the characteristics of the individual offender, and then only to point out that we were not required in that case to decide whether individual characteristics could ever be a factor in the proportionality analysis. *Worthley,* 2003 ME 14, ¶ 7, 815 A.2d at 377.

[¶ 18] Furthermore, although federal authority does not control our interpretation of our State Constitution, it is instructive that in its recent Eighth Amendment jurisprudence the Supreme Court has upheld or struck down severe sentences based on consideration of a particular offense or category of offender,[8] but has not

---

7. *See Worthley,* 2003 ME 14, ¶ 6, 815 A.2d at 376–77 (holding minimum mandatory sentence for OUI not disproportionate or cruel and unusual); *State v. Vanassche,* 566 A.2d 1077, 1080–81 (Me.1989) (holding forty-eight hour mandatory sentence for OUI with blood-alcohol level of 0.15% or more not disproportionate to the crime); *State v. Frye,* 390 A.2d 520, 521 (Me.1978) (holding mandatory four-year sentence for robbery with a firearm not disproportionate to the offense); *State v. Briggs,* 388 A.2d 507, 508 (Me.1978) (holding mandatory $500 fine for night hunting not excessive); *State v. King,* 330 A.2d 124, 125, 127 (Me.1974) (holding minimum mandatory sentence for sale of amphetamine not disproportionate and thus not cruel and unusual); *State v. Farmer,* 324 A.2d 739, 745–46 (Me. 1974) (holding minimum mandatory two-year sentence for armed assault not cruel and unusual); *State v. Lubee,* 93 Me. 418, 45 A. 520 (1899) (holding fine for short lobsters not

unconstitutionally excessive and value of lobsters in particular case irrelevant); *c.f. State v. Alexander,* 257 A.2d 778, 783 (Me.1969) (holding five-day sentence imposed by court in its discretion for contemptuous "reprehensible conduct" not excessive or cruel or unusual).

8. *See Kennedy,* 554 U.S. ——, 128 S.Ct. 2641, 171 L.Ed.2d at 540 (holding death penalty for non-fatal rape of a child violates Eighth Amendment); *Roper v. Simmons,* 543 U.S. 551, 568, 125 S.Ct. 1183, 161 L.Ed.2d 1 (2005) (holding death penalty for juveniles under age eighteen violates Eighth Amendment); *Ewing v. California,* 538 U.S. 11, 17–18, 30–31, 123 S.Ct. 1179, 155 L.Ed.2d 108 (2003) (holding sentence of twenty-five years to life for stealing three golf clubs under "three strikes" law not grossly disproportionate and therefore not cruel and unusual); *Atkins v. Virginia,* 536 U.S. 304, 321, 122 S.Ct.

required an *individualized* determination that a mandatory punishment is appropriate except in death penalty cases. *See Harmelin v. Michigan*, 501 U.S. 957, 996, 111 S.Ct. 2680, 115 L.Ed.2d 836 (1991) ("We have drawn the line of required individualized sentencing at capital cases, and see no basis for extending it further."). Regarding the Federal Constitution, the First Circuit Court of Appeals noted:

There is no constitutional right, in noncapital cases, to individualized sentencing. Legislatures are free to provide for mandatory sentences for particular offenses.... [T]he mere fact that a sentence is mandatory and severe does not make it cruel and unusual within the meaning of the Eighth Amendment.

*United States v. Campusano*, 947 F.2d 1, 3–4 (1st Cir.1991).

[¶ 19] A plain-language construction of section 9 is further supported by our cases holding that the Legislature has the power to enact mandatory sentences. *See State v. Lane*, 649 A.2d 1112, 1115 (Me.1994) (collecting cases). Implicit in those decisions is a recognition that the Legislature may lawfully choose to remove a sentencing court's discretion when it determines it is appropriate to do so, subject only to the constitutional prohibition against punishment disproportionate to a given offense. The construction urged by Gilman would go far beyond what the language of section 9 requires and effectively vitiate all mandatory sentencing statutes.

■ [¶ 20] A minimum mandatory sentence is the Legislature's establishment of a basic sentence, and a legislative decision that a sentencing court may not find that mitigating factors justify a lesser maximum sentence.[9] Consideration of a defendant's individual circumstances in finding that a mandatory sentence is disproportionate as applied to that person is simply reinstatement by judicial declaration of a sentencing court's ordinary discretion to weigh mitigating factors, and then impose a maximum sentence that is lower than the basic sentence. *See* 17–A M.R.S. § 1252–C(2). A court would then always have the sentencing discretion that the Legislature intended to remove, because individual mitigating circumstances could always be used as justification to impose less than the mandatory minimum sentence on the ground that the mandatory sentence is disproportionate as applied in a particular case. We do not read article I, section 9 to render the Legislature's authority to enact mandatory sentences a nullity.[10]

[¶ 21] Because we hold that the clause, "all penalties and punishments shall be proportioned to the offense," means what its plain language says, and does not require consideration of the individual circumstances of each offender, the sentence imposed on Gilman was illegal unless it

2242, 153 L.Ed.2d 335 (2002) (holding death penalty for mentally retarded offenders violates Eighth Amendment); *Harmelin v. Michigan*, 501 U.S. 957, 961, 995–96, 111 S.Ct. 2680, 115 L.Ed.2d 836 (1991) (holding mandatory sentence of life without parole for possessing 672 grams of cocaine not cruel and unusual).

9. In felony cases where the applicable statute does not specify a mandatory sentence, the sentencing court first determines a basic sentence considering the nature and seriousness of the crime as committed, then considers

aggravating and/or mitigating factors to arrive at a maximum sentence that may be higher or lower than the basic sentence, and finally determines whether any of the maximum sentence should be suspended in arriving at a final sentence. 17–A M.R.S. § 1252–C.

10. For defendants such as Gilman who assert that a mandatory sentence is too harsh as applied, the Maine Constitution gives the Governor the equitable power to "grant reprieves, commutations and pardons" in individual cases. Me. Const. art. V, pt. 1, § 11.

was disproportionate to the crime he committed.

## B. The Two–Year Minimum Mandatory Sentence

[¶ 22] This Court "always [has] the power and duty to uphold the State and Federal Constitutions," and will "protect the individual from an unconstitutional invasion of his rights by the legislative ... branch[ ] of government." *Dep't of Corr. v. Superior Court,* 622 A.2d 1131, 1134–35 (Me.1993) (quotation marks omitted). Nevertheless, we recognize the primacy of the Legislature as "the voice of the sovereign people" in the area of crime and punishment:

> The fixing of an adequate [criminal] penalty is properly and legitimately a matter of legislative concern. It is not the office of the judiciary to interpose constitutional limitations where none need be found.
>
> . . . .
>
> Of course a mandatory sentence of great severity may at some point lose its rational relation to a permissible legislative purpose; a disparity between the sentence and the evil to be avoided might then be a cruelty of constitutional dimensions.
>
> . . . .
>
> It seems to us that the interest of the legislature is paramount in the field of penology and the public safety. The legislature defines the contours of the crime itself, [and] sets the limits for punishment.... The underlying structure of the penal system is statutory; the coherence of the system is to be found in legislative direction.

*State v. King,* 330 A.2d 124, 127–28 (Me. 1974); *see State v. Benner,* 553 A.2d 219, 220 (Me.1989) ("[T]he power of punishment is vested in the legislative, not in the judicial department. It is the legislature, not the court, which is to define a crime and ordain its punishment." (quotation marks omitted)).

[¶ 23] We have described the test for determining when a sentence is cruel and unusual as whether it "is greatly disproportionate ... and whether it offends prevailing notions of decency," *Worthley,* 2003 ME 14, ¶ 6, 815 A.2d at 376; whether it "shock[s] the conscience of the public, [or] our own respective or collective sense of fairness," *State v. Reardon,* 486 A.2d 112, 121 (Me.1984); or whether it is "inhuman [or] barbarous," *State v. Heald,* 307 A.2d 188, 192 (Me.1973). Because the Legislature is "the voice of the sovereign people," *King,* 330 A.2d at 127, and thus expresses the people's will, only the most extreme punishment decided upon by that body as appropriate for an offense could so offend or shock the collective conscience of the people of Maine as to be unconstitutionally disproportionate, or cruel and unusual.[11] In short, our system of government assumes that the judgment of the Legislature *is* the collective judgment of the people.

[¶ 24] Gilman was convicted of a Class C crime, punishable by a maximum of five years imprisonment. *See* 17–A M.R.S. § 1252(2)(C) (2009). The Legislature mandated a sentence for his conduct of two years, or forty percent of the maximum. 29–A M.R.S. § 2557–A(2XD). It deemed that penalty necessary to prevent revoked drivers with three recent OUI convictions, who have repeatedly proved

---

11. Discussing what would qualify as disproportionate under the Eighth Amendment, the Supreme Court used the hypothetical example of "a legislature [making] overtime parking a felony punishable by life imprisonment." *Ewing,* 538 U.S. at 21, 123 S.Ct. 1179 (plurality opinion) (quotation marks omitted).

that they are willing to endanger others by operating a motor vehicle while impaired, from continuing to drive under any circumstances. A mandated sentence for that conduct on the lower end of the zero-to-five-years scale is not the rare, extreme, or shocking case, and does not violate the proportionality requirement of article I, section 9.

## C. Equal Protection

■■■ [¶ 25] Gilman contends that, because he was not impaired when he was stopped for speeding, the Legislature had no rational basis for increasing his sentence for operating after revocation because of his prior OUI convictions. He acknowledges that in order to reach the result he seeks, we would be required to overrule our decision in *State v. Chapin*, where the same argument was advanced and rejected. 610 A.2d 259, 261 (Me.1992).

[¶ 26] In *Chapin*, we concluded that the danger created by drunk drivers was "certainly strong enough" to justify the imposition of a minimum mandatory sentence for habitual offenders with OUI convictions who continue to drive. *Id.* Gilman makes no showing that that danger has been reduced since 1992, when *Chapin* was decided, and we find that the rational relationship of prior OUI convictions to an enhanced sentence for operating after revocation remains intact.

## D. Due Process

■■■ [¶ 27] Gilman next contends, on the authority of *State v. Stade*, 683 A.2d 164, that because his license had been revoked, the State was required to individually notify him that the minimum statutory penalties for operating after revocation

had increased with the enactment of 29–A M.R.S. § 2557–A. *See* P.L. 2005, ch. 606, § A–11 (effective Aug. 23, 2006).

[¶ 28] In *Stade*, we held that a defendant's due process rights may be violated when an agent of the State makes affirmative misrepresentations that are then relied upon to the defendant's detriment. 683 A.2d at 166. Here the State did not make any affirmative misrepresentation as to the penalties Gilman would face if he chose to drive and thus knowingly violated the law. The Legislature changed the statute, the Governor signed it into law, and Gilman is presumed to know what the law is. *See Houghton v. Hughes*, 108 Me. 233, 236–37, 79 A. 909 (1911). Contrary to Gilman's argument, due process did not require that he be individually notified of the change in order to ensure that he could conduct a thoughtful cost/benefit analysis before consciously choosing to break the law. Moreover, the law in effect at the time of his most recent OUI conviction provided that he could be sentenced to as long as five years in prison for the operation of any vehicle before his license was restored. *See* 17–A M.R.S. § 1252(2)(C); 29–A M.R.S. § 2557(2)(B)(2) (2005).[12]

## E. Confrontation Clause

■■■ [¶ 29] Gilman finally contends that his Sixth Amendment right to confront the witnesses against him was violated when the Superior Court admitted, over his objection, a certified record from the Secretary of State stating that his privilege to operate had been revoked, that he had received proper notice of the revocation, and that he had three OUI convictions within the preceding ten years. As

---

**12.** Title 29–A M.R.S. § 2557 was repealed and replaced by P.L. 2005, ch. 606, §§ A–10, A–11 (effective Aug. 23, 2006) (codified at 29–A M.R.S. § 2557–A (2008)). The indictment

against Gilman alleged that his most recent OUI conviction occurred on October 14, 2005.

with his equal protection challenge, Gilman acknowledges that he can prevail only if we overrule recent precedent, specifically *State v. Tayman*, 2008 ME 177, 960 A.2d 1151. In *Tayman*, we held that a disputed Secretary of State certification did not offend the Confrontation Clause because "[t]he certification serve[d] only to confirm the authenticity of the underlying records of the [Violations] Bureau, which themselves contain only routine, nontestimonial information." 2008 ME 177, ¶ 24, 960 A.2d at 1158; *see also State v. Knight*, 2009 ME 32, ¶ 10, 967 A.2d 723, 725 (relying on *Tayman*).

[¶ 30] Gilman contends that *Tayman* must be overruled on the authority of the Supreme Court's decision in *Melendez–Diaz v. Massachusetts*, — U.S. —, 129 S.Ct. 2527, 174 L.Ed.2d 314 (2009). In *Melendez–Diaz*, the Court held that the admission of a chemist's certificate stating that an analyzed substance was cocaine violated the Sixth Amendment, because although "[d]ocuments kept in the regular course of business may ordinarily be admitted at trial despite their hearsay status ... that is not the case if the regularly conducted business activity is the production of evidence for use at trial." *Id.* at 2538, 174 L.Ed.2d at 328 (citation omitted).

[¶ 31] We recently analyzed the impact of *Melendez–Diaz* on *Tayman* and concluded that *Tayman* remains good law. *State v. Murphy*, 2010 ME 28, ¶ 26, 991 A.2d 35, 43. *Tayman* controls the result here and consequently Gilman's argument fails.

The entry is:

Judgment of conviction affirmed. Sentence vacated; remanded to the Superior Court for resentencing.