MAINE SUPREME JUDICIAL COURT                        Reporter of Decisions
Decision:    2018 ME 59
Docket:      Yor-17-112
Argued       November 15, 2017
Decided:     April 26, 2018

Panel:       SAUFLEY, C.J., and ALEXANDER, MEAD, GORMAN, JABAR, HJELM, and HUMPHREY, JJ.

STATE OF MAINE

v.

JOHN V.C. LOPEZ

JABAR, J.

[¶1]  John V.C. Lopez appeals from a judgment of conviction entered by the sentencing court (York County, *Billings, J.*) following his guilty plea to an information charging him with felony murder (Class A), 17-A M.R.S. § 202(1) (2017).  The court imposed a prison sentence of twenty years, all but ten years suspended, with four years' probation and a restitution order of $6,592.63. Lopez challenges his sentence on the grounds that it (1) is unconstitutionally disproportionate; and (2) denies his constitutional right to equal protection. We affirm the judgment.

## I.  BACKGROUND

A.    Factual History

[¶2]  The following undisputed facts are set forth in the State's Rule 11 summary of evidence that, absent Lopez's guilty plea, would have been presented at trial. *See* M.R.U. Crim. P. 11; *State v. Ward*, 2011 ME 74, ¶ 2, 21 A.3d 1033.

[¶3]  On March 24, 2013, Lopez and Bub Nguany were managing a drug operation at a house in Saco when two unknown men stole drugs and money from them.  Lopez and Nguany made immediate plans to "recover their property and make things right."  The next day, Lopez texted Mohamud Mohamed and asked him for a firearm to use.  On March 26, 2013, the three men drove in two vehicles from Old Orchard Beach to Birch Street in Biddeford, where the victim, Charles Raybine, was sitting in a car with his nephew.  As Nguany got out of his car, Raybine's nephew heard "talking, arguing or conversation" between the vehicles' occupants.  Nguany then approached the driver's window, pulled out a gun, and shot Raybine three times.  Nguany quickly returned to his car and both vehicles were driven back to Old Orchard Beach.

[¶4]  After police responded to the scene, an alert was sent out with a description of the shooter and the vehicles.  Because an Old Orchard Beach police officer had stopped Nguany for a traffic infraction a couple of days earlier, he recognized the descriptions as matching Nguany and Nguany's vehicle.  Police then proceeded to arrest Nguany outside of Lopez's apartment.  Incident to that arrest, police discovered drugs and a gun in his backpack, and testing demonstrated that the gun matched the bullets and shell casings found at the scene of the shooting.

B.     Preliminary Proceedings

[¶5]  On May 6, 2015, Lopez was indicted for one count of intentional or knowing murder, 17-A M.R.S. § 201(1)(A) (2017), and one count of conspiracy to commit murder (Class A), 17-A M.R.S. § 151(1)(A) (2017).  After the State filed a notice of joinder concerning Lopez, Nguany, and Mohamed, Lopez pleaded not guilty to the charges at arraignment.  *See* M.R.U. Crim. P. 8(b).  Lopez subsequently reached a plea agreement with the State—in exchange for a guilty plea to an information charging him with felony murder (Class A), 17-A M.R.S. § 202(1), the State would dismiss the other charges and recommend a sentence of no greater than twenty-five years' imprisonment, all but fifteen years suspended, with four years' probation.  Lopez reserved his

4

right to argue for a lesser sentence than the sentence to be recommended by the State.[1]  Accordingly, Lopez waived indictment on the felony murder charge and pleaded guilty.  Like Lopez, co-defendant Mohamed was initially indicted for intentional or knowing murder and conspiracy to commit murder.  In exchange for Mohamed's guilty plea to the conspiracy charge, the State dismissed the charge of intentional or knowing murder.  For the charge of conspiracy to commit murder, 17-A M.R.S. § 151(1)(A), Mohamed received a sentence of seven years' imprisonment, all but three years suspended, with four years' probation.  Nguany—the man who pulled the trigger—pleaded guilty to murder, 17-A M.R.S. § 201(1)(A), and conspiracy to commit murder, 17-A M.R.S. § 151(1)(A), and received a sentence of forty years' imprisonment.

C.    Rule 11 Proceedings

[¶6]  At the Rule 11 hearing on November 4, 2016, the court (*Billings, J.*) verified that Lopez understood the contents of the plea agreement and confirmed that Lopez's guilty plea was knowing and voluntary.  Asked whether he wished to correct any part of State's summary of the evidence, Lopez replied, "No, Your Honor."  The court therefore accepted the guilty plea.

---

[1] Thus, the parties presented a "cap plea."  *See State v. Bean*, 2018 ME 58, ¶ 22, --- A.3d ---.

D.      Sentencing

[¶7]  In chambers and on the record with counsel before sentencing two weeks later on February 17, 2017, the court asked the State to explain the disparity between the sentence recommended for Lopez and the sentence received by Mohamed.  Specifically, the court asked the State "why the State sees the distinction between Moham[e]d and . . . Lopez."  The court stated that its concern centered on the principle that

> part of the provisions of the Sentencing Code is to eliminate disparity in sentencing between defendants.  I think public policy is aimed at disparity generally across . . . a class of crimes and looking at it . . . statewide.  But, to me, it is particularly an issue with co[-]defendants in the same case.

[¶8] According to the State, there was direct evidence that Lopez (1) was actively involved in the drug trade when he was robbed the night before the murder; and (2) sought out a firearm within twenty-four hours after that robbery.  Conversely, the State lacked direct evidence that Mohamed engaged in the drug trade, and the only evidence linking him to the murder was the cell phone location records and the text message between Lopez and Mohamed in which Lopez requested a firearm.  The State explained that although it could present witnesses who would place Mohamed in Old Orchard Beach before the murder, witnesses identifying Mohamed in Old Orchard Beach after the murder

"were problematic in terms of getting them here and having their cooperation. That was sort of the proof issue."

[¶9]  The State made its final sentence recommendation of twenty-five years' imprisonment, all but fifteen years suspended, and four years' probation. Lopez argued that the court should impose a lesser sentence of seven years' imprisonment, all but three years suspended, and four years' probation.  In open court after sentencing recommendations, the court again addressed the variation between the sentence the State recommended for Lopez and the sentence Mohammed received.  First, the court noted the "legitimate circumstances that differentiate Mr. Lopez's circumstances from Mr. Mohamed's circumstances," explaining that "the State had some doubt about their ability to prove particularly the [murder] charge but possibly even the conspiracy charge due to the state of the evidence."  In the court's view, "when an experienced prosecutor comes forward and says . . . they believe they have the evidence and believe somebody is guilty, that they have some doubt about how that would actually play out in court, that's something the court should take into account."  Second, the court found it "significant" that Lopez was involved in the drug trade and "was present at the time of the robbery that, it seems pretty clear, kicked off the course of events that led to Mr. Raybine's

tragic murder." Finally, the court acknowledged its obligation to "permit sentences that do not diminish the gravity of the offense," and reiterated that Lopez pleaded guilty to a "serious charge that ultimately involves the death of a human being."

[¶10] The court set the basic sentence for Lopez at twenty years' imprisonment. The court set out what it considered aggravating factors, which included (1) Lopez's involvement in the drug trade; (2) the crime's impact on the victim's family; and (3) the "commission of armed robberies, shootings, those going on in our community and the effect that that has on our community and the public as a whole." The court also set out mitigating factors, which included (1) Lopez's youth; (2) his history as a "productive member of society"; (3) his intelligence; (4) his "effort while in jail"; and (5) the fact that Lopez pleaded guilty and "spared the victim's family [from] a trial." Concluding that aggravating and mitigating factors were "closely in balance," the court determined that the maximum period of incarceration was also twenty years.

[¶11] In arriving at the final sentence, the court suspended ten years of the twenty-year sentence and ordered four years' probation. The court considered (1) Lopez's efforts while in jail; (2) his lack of significant prior criminal conduct; (3) that Lopez accepted responsibility by expressing remorse

8

for his actions; (4) his "character, his family and community support"; (5) the "gravity and seriousness" of the felony murder offense; and (6) a concern for public safety because, despite all Lopez's advantages, "he made very bad choices that led him to a circumstance . . . that someone ended up being murdered." The court also ordered Lopez to pay $6,592.63 in restitution.

E.      Post-Conviction Proceedings

[¶12] On March 6, 2017, Lopez filed an application for leave to appeal his sentence pursuant to 15 M.R.S. § 2151 (2017) and M.R. App. P. 20(a)(1) (Tower 2016).[2] The Sentence Review Panel denied that application. Lopez also filed a timely notice of appeal. After confirming that Lopez intended to claim a violation of his constitutional rights, a permissible ground for challenging his conviction on direct appeal, *see State v. Bennett*, 2015 ME 46, ¶ 13, 114 A.3d 994, we permitted the appeal to proceed.

---

[2] The restyled Maine Rules of Appellate Procedure do not apply because this appeal was filed before September 1, 2017. *See* M.R. App. P. 1 (restyled Rules).

## II. DISCUSSION

[¶13]    Lopez contends that his sentence is unconstitutionally disproportionate and that it denies him the equal protection of the law.  "We review the legality and constitutionality of a sentence de novo."  *Id.* ¶ 14.  "On direct appeal, we are limited to reviewing only the legality, and not the propriety, of sentences imposed by the trial court."  *Id*. (quotation marks omitted).

A.    Disproportionality

[¶14]  Article 1, section 9 of the Maine Constitution expressly provides that "all penalties and punishments shall be proportioned to the offense." Me. Const. art. I, § 9, cl. 2.  "Under the Maine Constitution, whether a punishment is unconstitutionally disproportionate to the offense committed or is otherwise cruel or unusual are closely related, but not identical, questions."  *Ward*, 2011 ME 74, ¶ 16, 21 A.3d 1033.  "Unlike the Eighth Amendment, article 1, section 9 of the Maine Constitution explicitly separates the two protections into an affirmative command and a prohibition: 'All penalties and punishments shall be proportioned to the offense'; 'nor shall cruel nor unusual punishments be inflicted.'" *Id.* (alterations omitted) (quoting Me. Const. art. I, § 9, cls. 2, 5).  Thus, under the Maine Constitution, "a punishment can violate article 1, section 9 if it

is disproportionate to the offense for which it is being imposed, even if it is not cruel or unusual in the sense that it is inherently barbaric." *Id.* ¶ 17.

[¶15] To that end, we have established a two-part test to determine whether a sentence violates article 1, section 9. *Id.* ¶ 18 n.4. First, we "look to see whether a particular sentence is greatly disproportionate to the offense for which it is imposed." *Id.* Second, if it is not greatly disproportionate, we "examine whether it offends prevailing notions of decency." *Id.* A sentence that fails either part of the test is unconstitutional. *Id.* (citing *State v. Frye*, 390 A.2d 520, 521 (Me. 1978)).[3] In applying this test, "we are mindful that only the most extreme punishment decided upon by the Legislature as appropriate for an offense could so offend or shock the collective conscience of the people of Maine as to be unconstitutionally disproportionate, or cruel and unusual." *Id.* ¶ 18 (alteration omitted) (quotation marks omitted).

---

[3] Lopez argues only that his twenty-year imprisonment is disproportionate to the offense of felony murder, and not that his sentence "offends prevailing notions of decency." Thus, our review of his claim is limited to the issue of disproportionality. *See Holland v. Sebunya*, 2000 ME 160, ¶ 9 n.6, 759 A.2d 205 ("The failure to mention an issue in the brief or at argument is construed as either an abandonment or a failure to preserve that issue."). However, even if Lopez did not waive that issue, his twenty-year term of imprisonment for felony murder is not cruel nor unusual "in the sense that it is inherently barbaric." *State v. Ward*, 2011 ME 74, ¶ 17, 21 A.3d 1033; *see State v. King*, 330 A.2d 124, 127 (Me. 1974) ("There is no question that a prison term is an entirely ordinary and constitutionally defensible mode of punishment . . . .").

1.    Comparing the Offense and the Sentence

[¶16]   "[I]n conducting a disproportionality analysis, '[a] court must begin by comparing the gravity of the offense and the severity of the sentence.'" *Id.* ¶ 20 n.5 (quoting *Graham v. Florida*, 560 U.S. 48, 60 (2010)).   "Factors affecting the proportionality of a sentence to the offense are determined on a case-by-case basis because no one factor will be dispositive in a given case." *State v. Stanislaw*, 2013 ME 43, ¶ 30, 65 A.3d 1242 (quotation marks omitted). When determining "whether the punishment imposed is proportional to the offense, 'regard must be had to the purpose[] of the enactment, and to the importance and magnitude of the public interest sought by it to be protected.'" *State v. Vanassche*, 566 A.2d 1077, 1081 (Me. 1989) (quoting *State v. Lubee*, 93 Me. 418, 421, 45 A. 520 (1899)).   We have previously compared a defendant's offense to his sentence by (1) evaluating where that defendant's term of imprisonment fell within the range of incarceration time authorized by the Legislature, *see Bennett*, 2015 ME 46, ¶ 15, 114 A.3d 994; *State v. Gilman*, 2010 ME 35, ¶ 24, 993 A.2d 14; and (2) considering the facts of a case "in conjunction with the commonly accepted goals of punishment."   *Stanislaw*, 2013 ME 43, ¶ 30, 65 A.3d 1242 (alteration omitted) (quotation marks omitted).

12

[¶17]  In the rare case[4] where that threshold comparison "results in an inference of gross disproportionality we then compare the defendant's sentence with the sentences received by other offenders in the same jurisdiction." *Id.* ¶ 29 (alteration omitted) (quotation marks omitted).

[¶18]  Considering the offense of felony murder, Lopez's twenty-year term of imprisonment is not unconstitutionally disproportionate.  In fact, we have already affirmed the constitutionality of a twenty-year sentence for that offense.  *See State v. Reardon*, 486 A.2d 112, 121 (Me. 1984) ("The potential sanction of imprisonment for the period of twenty years [at the time, the maximum sentence for felony murder] . . . does not denote such punitive severity as to shock the conscience of the public, nor our own respective or collective sense of fairness.").

[¶19]  Moreover, as noted above, we have concluded on several occasions that disproportionality may be determined by comparing a defendant's sentence with the maximum term of imprisonment authorized by the Legislature.  *See Bennett*, 2015 ME 46, ¶ 15, 114 A.3d 994 (a two-week term of

---

[4] "Discussing what would qualify as disproportionate under the Eighth Amendment, the Supreme Court has used the hypothetical example of 'a legislature making overtime parking a felony punishable by life imprisonment.'" *State v. Gilman*, 2010 ME 35, ¶ 23 n.11, 993 A.2d 14 (alteration omitted) (quoting *Ewing v. California*, 538 U.S. 11, 21 (2003).

imprisonment and $500 fine for theft by receiving stolen property was not unconstitutionally disproportionate because the defendant's "sentence [fell] within the lower range of the lowest quadrant of the incarceration time authorized by the Legislature for a Class D crime"); *Gilman*, 2010 ME 35, ¶ 24, 993 A.2d 14 ("A mandated sentence for [operating after habitual offender revocation] on the lower end of the zero-to-five-years scale [authorized by the Legislature] is not the rare, extreme, or shocking case, and does not violate the proportionality requirement of article 1, section 9.").

[¶20]   Here, 17-A M.R.S. § 1252(2)(A) (2017) permits a maximum sentence of thirty years' imprisonment for felony murder.  As the State sets forth, this thirty-year maximum sentence—a ten-year increase over the sentence we affirmed in *Reardon*, 486 A.2d at 121-22—signals the Legislature's "greater disdain for such serious criminal conduct."  *See* P.L. 2003, ch. 657, § 10.  Therefore, Lopez received only two-thirds of the full sentence permitted by law, a twenty-year term of imprisonment deemed constitutional in 1984 when it reflected the maximum sentence available.  *See Reardon*, 486 A.2d at 120-22.

[¶21]  Finally, the undisputed facts of this case, "in conjunction with the commonly accepted goals of punishment," further support our conclusion that Lopez's sentence is not unconstitutionally disproportionate.  *Stanislaw*,

2013 ME 43, ¶ 30, 65 A.3d 1242 (alteration omitted) (quotation marks omitted). As the sentencing court observed, Lopez was involved in the drug trade and, as a result of a robbery, made plans with Nguany to "recover their property and make things right." In order to "make things right," he requested a firearm from Mohamed, and one day later, this solicitation resulted in the killing of Charles Raybine.

[¶22] In light of these facts, Lopez's twenty-year term of imprisonment did not violate any goals of punishment. *See* 17-A M.R.S. § 1151(1)-(8) (2017). The court properly observed the gravity of Lopez's conduct by considering both his involvement in the drug trade and the crime's effect on the victim's family. *See id.* § 1151(8). Moreover, despite his contention to the contrary, Lope's twenty-year sentence is not inequitable. *See id.* § 1151(5). Unlike the sentence imposed in *Stanislaw*, which unconstitutionally "create[d] an overall sentence . . . that exceed[ed] sentences imposed for even more serious crimes," 2013 ME 43, ¶ 33, 65 A.3d 1242, Lopez's twenty-year prison sentence equals only half of the forty-year sentence that Nguany received in exchange for his plea to murder and conspiracy to commit murder. Mohamed's seven-year sentence also does not indicate sentence inequality, given that he pleaded guilty to conspiracy to commit murder. As such, because a review of Lopez's offense and his sentence

does not generate an "inference of gross disproportionality," it is not necessary to compare his sentence to additional "sentences imposed for similar or more severe crimes within our jurisdiction." *Id.* ¶ 34.

B.      Equal Protection

[¶23]     Lopez argues that the sentencing court's imposition of a twenty-year sentence denied him the equal protection of the law because Mohamed received only a seven-year sentence, despite what Lopez claims were "substantially similar roles in the crime."   Lopez further asserts that the sentencing court erred in accepting "the State's . . . argument that it had a weaker case against Mohamed," arguing that the evidence demonstrated both that Mohamed was willing to supply Lopez with a firearm, and that he traveled with Lopez on the night of the murder.

[¶24]     The Equal Protection Clause of the Fourteenth Amendment prohibits any state from denying "to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1.  The Equal Protection Clause "requires, generally, that persons similarly situated be treated alike." *Anderson v. Town of Durham*, 2006 ME 39, ¶ 28, 895 A.2d 944.  The Maine Constitution requires the same.  *Id.*; *see* Me. Const. art I, § 6-A.  Where a government action "involves neither a fundamental right nor a suspect class, different treatment

accorded to similarly situated persons need only be rationally related to a legitimate state interest." *Sch. Admin. Dist. No. 1. v. Comm'r, Dep't of Educ.*, 659 A.2d 854, 857 (Me. 1995).

[¶25] Here, Lopez and Mohamed cannot be considered similarly situated because they pleaded guilty to different offenses. Lopez has not raised the argument that his guilty plea lacked the same procedural safeguards as his co-defendants. *See Allen v. Van Cantfort*, 436 F.2d 625, 631 (1st Cir. 1971). Moreover, "there is no constitutional requirement that [co-defendants] receive the same final disposition." *Id.*; *see United States v. Pierce*, 400 F.3d 176, 183 (4th Cir. 2005); *Nobles v. Warden*, 787 P.2d 390, 391 (Nev. 1990); *Commonwealth v. Williams*, 896 A.2d 523, 547 (Pa. 2006).

The entry is:

Judgment affirmed.

---

Andrea S. Manthorne, Esq. (orally), Roach, Hewitt, Ruprecht, Sanchez & Bischoff, Portland, for appellant John V.C. Lopez

Janet T. Mills, Attorney General, and Donald W. Macomber, Asst. Atty. Gen. (orally), Office of the Attorney General, Augusta, for appellee State of Maine

York County Superior Court docket number CR-2015-918
FOR CLERK REFERENCE ONLY