MAINE SUPREME JUDICIAL COURT                    Reporter of Decisions
Decision:       2024 ME 26
Docket:         SRP-23-108
Argued:         January 10, 2024
Decided:        April 16, 2024

Panel:          STANFILL, C.J., and MEAD, HORTON, CONNORS, LAWRENCE, and DOUGLAS, JJ.

STATE OF MAINE

v.

RANDALL J. WEDDLE

LAWRENCE, J.

[¶1]  Randall J. Weddle appeals from the sentence the trial court (Knox County, *Stokes, J.*) imposed on two counts of manslaughter (Class A), 17-A M.R.S. § 203(1)(A) (2023), two counts of causing a death while operating under the influence (Class B), 29-A M.R.S. § 2411(1-A)(D)(1-A) (2023), and eleven other related charges.[1]  We affirmed the judgment of conviction in *State v. Weddle*, 2020 ME 12, 224 A.3d 1035, and we now affirm the sentence imposed by the court.

---

[1] Weddle was also convicted of one count of causing injury while operating under the influence (Class C), 29-A M.R.S. § 2411(1-A)(D)(1) (2023), one count of aggravated driving to endanger (Class C), 29-A M.R.S. § 2413(1-A) (2023), one count of driving to endanger (Class E), 29-A M.R.S. § 2413(1), and eight counts of violations of commercial motor carrier operator rules (Class E), 29-A M.R.S. § 558-A(1)(A) (2023).

## I. BACKGROUND

### A. Facts

[¶2]  The following facts are drawn from the procedural record and our 2020 opinion affirming Weddle's conviction, *Weddle*, 2020 ME 12, ¶¶ 3-9, 224 A.3d 1035.  *See Gordon v. State*, 2024 ME 7, ¶ 2, 308 A.3d 228.

[¶3]  "On March 18, 2016, law enforcement officers, firefighters, and medical rescue personnel responded to a major motor vehicle accident on Route 17 in Washington, Maine."  *Weddle*, 2020 ME 12, ¶ 3, 224 A.3d 1035.  The accident involved five vehicles, one of which was engulfed in flames, and resulted in the death of two drivers.  *Id.*  After an investigation, officers determined that Weddle, the driver of a larger tractor trailer, had caused the accident.  *Id.* ¶¶ 3-7.  Hospital tests revealed that Weddle had alcohol in his system.  *Id.* ¶ 7.  Several days after the accident, officers found a three-quarters-full whiskey bottle and a shot glass in Weddle's truck.  *Id.* ¶ 7.

### B. Procedure

[¶4]  In June 2016, Weddle was charged by indictment with two counts of manslaughter (Class A), 17-A M.R.S. § 203(1)(A), two counts of aggravated criminal operating under the influence (Class B), 29-A M.R.S. § 2411(1-A)(D)(1-A), one count of causing injury while operating under the

influence (Class C), 29-A M.R.S. § 2411(1-A)(D)(1), one count of aggravated driving to endanger (Class C), 29-A M.R.S. § 2413(1-A) (2023), one count of driving to endanger (Class E), 29-A M.R.S. § 2413(1), and eight counts of violating commercial motor carrier operator rules (Class E), 29-A M.R.S. § 558-A(1)(A) (2023). *Id.* ¶ 8.

[¶5] The court held a jury trial from January 23 to 29, 2018. The jury found Weddle guilty of all counts. On March 23, 2018, the court held a sentencing hearing. The court conducted a *Hewey* sentencing analysis, *see State v. Hewey*, 622 A.2d 1151, 1154-55 (Me. 1993); 17-A M.R.S. § 1252-C (2018),[2] regarding the manslaughter counts. In setting the basic sentence at twenty years, the court considered the nature and circumstances of the crime. 17-A M.R.S. § 1252-C(1). Specifically, Weddle had operated a commercial vehicle carrying a load of lumber when he was ill, fatigued, and taking prescription medication for which the use of alcohol was contraindicated; and he had alcohol above the legal limit in his system.[3] He exceeded the fifty-mile-per-hour speed

---

[2] Title 17-A M.R.S. § 1252-C has since been repealed and replaced. *See* P.L. 2019, ch. 113, §§ A-1, A-2 (effective May 16, 2019) (codified at 17-A M.R.S. § 1602 (2023)).

[3] The court understood that Weddle's prescription medication should not be taken in conjunction with the use of alcohol, because the two substances together can intensify the impairment of a person's mental and physical faculties, the same faculties that would be critical to the operation of an 80,000-pound, fully loaded tractor trailer.

4

limit by twenty to thirty miles per hour. The court also looked at comparable cases provided by Weddle and noted that most, if not all, of the comparable cases involved passenger automobiles, not commercial vehicles. The court noted the need to take account of "the difference between an automobile -- a passenger automobile and a commercial vehicle" weighing forty tons when fully loaded; the latter is "a massive projectile" that "carries with it the potential for lethality that is almost incalculable."

[¶6]  In setting the maximum sentence at thirty years, the court weighed mitigating and aggravating factors. 17-A M.R.S. § 1252-C(2). For mitigating factors, the court considered Weddle's work history and his letter of remorse.[4] For aggravating factors, the court considered the impact of the multiple-vehicle crash on the victims and their families, Weddle's criminal history (including twelve prior OUI convictions, eleven speeding violations, and Weddle's loss of licenses in different states), and the need to protect the public. The court concluded that the aggravating factors outweighed the mitigating factors.

[¶7]  The court set the final sentence at thirty years, with all but twenty-five years suspended, followed by four years of probation. The court

---

[4]  The court also observed, however, that Weddle did not exhibit significant acceptance of responsibility for the crash, and it did not accord him "much mitigation on that score."

believed that a period of supervision following Weddle's release from incarceration would protect the public. The court imposed a range of terms of incarceration for the other counts to run concurrently with the two manslaughter sentences.

[¶8] Weddle did not timely apply for review of his sentence. *See* M.R. App. P. 2B(b)(1), 20(b). He filed a petition for post-conviction relief on April 21, 2020. During the post-conviction review proceeding,[5] the parties and the court agreed to allow Weddle to apply for review of his sentence, *see* 15 M.R.S. § 2130 (2023) (permitting a post-conviction court to "grant[] the right to take an appeal from the criminal judgment"), which he did. The Sentence Review panel granted his application to appeal his sentence. *See* 15 M.R.S. §§ 2151-52 (2023).

## II. DISCUSSION

[¶9] On appeal, Weddle challenges both the legality and propriety of the sentence.[6]

---

[5] Pursuant to 15 M.R.S. § 2131(1) (2023) and M.R. App. P. 19(f), Weddle filed an appeal seeking a certificate of probable cause permitting our review of the post-conviction court's denial of the remainder of his petition for post-conviction review. On February 9, 2024, we entered the denial of his request for a certificate of probable cause.

[6] Although Weddle did not raise the legality of the sentence in his direct appeal, *State v. Weddle*, 2020 ME 12, 224 A.3d 1035, the Sentence Review Panel and the Law Court have the statutory authority to review questions of legality in a discretionary sentence review. *See State v. Murray-Burns*, 2023 ME 21, ¶¶ 12-17, 290 A.3d 542; 15 M.R.S. § 2152 (2023).

## A.    Legality of the Sentence

[¶10]  Weddle first argues that his sentence is unconstitutional because it is not proportioned to the offense.  We review de novo the legality and constitutionality of a sentence.  *State v. Lopez*, 2018 ME 59, ¶ 13, 184 A.3d 880. We have established a two-part test to determine whether a sentence violates the Maine Constitution.[7]  *State v. Ward*, 2011 ME 74, ¶¶ 18-19, 21 A.3d 1033; *Lopez*, 2018 ME 59, ¶ 15, 184 A.3d 880; *see* Me. Const. art. I, § 9 ("[A]ll penalties and punishments shall be proportioned to the offense.").  We consider "whether the sentence imposed is greatly disproportionate" and "whether it offends prevailing notions of decency, whether it shocks the conscience of the public, or our own respective or collective sense of fairness, or whether it is inhuman or barbarous."  *Ward*, 2011 ME 74, ¶ 18, 21 A.3d 1033 (alterations and quotation marks omitted).  "Because the Legislature is the voice of the sovereign people and thus expresses the people's will, only the most extreme punishment decided upon by that body as appropriate for an offense could . . . be unconstitutionally disproportionate."  *See State v. Gilman*, 2010 ME 35, ¶ 23, 993 A.2d 14 (citation and quotation marks omitted).

---

[7]  The "United States Supreme Court has recognized that the Maine Constitution anticipates a broader proportionality review than the Eighth Amendment."  *State v. Stanislaw*, 2013 ME 43, ¶ 26, 65 A.3d 1242; *see Harmelin v. Michigan*, 501 U.S. 957, 982 (1991).

[¶11]   When analyzing proportionality, we "begin by comparing the gravity of the offense [to] the severity of the sentence." *Lopez*, 2018 ME 59, ¶ 16, 184 A.3d 880 (quotation marks omitted). "We have previously compared a defendant's offense to his sentence by (1) evaluating where that defendant's term of imprisonment fell within the range of incarceration time authorized by the Legislature, and (2) considering the facts of a case in conjunction with the commonly accepted goals of punishment." *Id.* (citations and quotation marks omitted).

[¶12]   We examine the plain language and occasionally the legislative purpose and history of a classification of a crime to determine whether a defendant's term of imprisonment fell within the range of incarceration time authorized by the Legislature. *See Gilman*, 2010 ME 35, ¶ 24, 993 A.2d 14; *Lopez*, 2018 ME 59, ¶ 20, 184 A.3d 880; *cf. Ward*, 2011 ME 74, ¶¶ 28-29, 21 A.3d 1033.   Here, 17-A M.R.S. § 1252(2)(A) permits a maximum term of imprisonment of thirty years for manslaughter. *See* 17-A M.R.S. § 203(1)(A). Vehicular manslaughter was originally designated as a Class C offense, permitting a maximum term of imprisonment of five years. *See* P.L. 1977, ch. 510, § 40 (effective October 24, 1977) (codified at 17-A M.R.S. § 203(3) (1977)); *see* 17-A M.R.S.A. § 1252(2)(C) (1975).  The Legislature amended the

statute to reclassify vehicular manslaughter as a Class B crime in 1989, and then in 1997 eliminated the distinction between vehicular manslaughter and other forms of manslaughter by classifying any manslaughter charge as a Class A crime. P.L. 1989, ch. 505, § 1 (effective Sept. 30, 1989) (codified at 17-A M.R.S. § 203(3)(A) (1989)); P.L. 1997, ch. 34, § 1 (effective June 26, 1997) (codified at 17-A M.R.S. § 203 (1997)).[8] The evolving classification of manslaughter committed while operating a vehicle "signals the Legislature's greater disdain for such serious criminal conduct" and its desire that such conduct be punished consistently with manslaughter committed in other ways. *Lopez*, 2018 ME 59, ¶ 20, 184 A.3d 880 (quotation marks omitted). Weddle's sentence does not exceed the statutory maximum term of imprisonment of thirty years. *See Gilman*, 2010 ME 35, ¶ 23, 993 A.2d 14.

[¶13] The court did not err in considering the facts of the case and the goals of punishment. The court emphasized that Weddle was not only speeding while ill, fatigued, and under the influence of prescription drugs and alcohol but also behind the wheel of a large tractor trailer that the court characterized as a

---

[8] The Legislature passed the1997 change because, in *State v. Berube*, 669 A.2d 170, 171-72 (Me. 1995), we vacated a conviction of a Class A manslaughter, because the court did not provide to the jury an instruction of a Class B manslaughter charge. *See* Summary of Legislation Before the Joint Standing Committees 7-8 (Aug. 1997) ("Public Law 1997, chapter 34 overrules State v. Berube to the extent that it makes all vehicular homicides a Class A crime.").

"massive projectile," "missile," and "deadly weapon that's traveling on the road." The sentence also observes the gravity of the crime's effect on the victims and their families. 17-A M.R.S. § 1151(8) (2018). Weddle's sentence considers his criminal history, including double-digit numbers of prior OUI convictions and prior speeding violations, his history of losing driving privileges in multiple states, and the necessity for years of incarceration to deter further dangerous behavior by Weddle and to promote public safety. *Id.* § 1151(1). We therefore conclude that the sentence is not greatly disproportionate to the offense,[9] and proceed to analyze whether Weddle's sentence offends prevailing notions of decency.

[¶14] A sentence close to the maximum, such as the one at issue here, is not necessarily "rare, extreme, or shocking," because the Legislature accounted for the sentence when it set that maximum. *See Gilman*, 2010 ME 35, ¶ 24, 993

---

[9] Weddle cites some cases where defendants committed manslaughter while driving and received more lenient sentences to suggest that his sentence is grossly disproportionate. *See State v. Lowe*, 2015 ME 124, ¶¶ 2-7, 15, 124 A.3d 156 (sentence of eight years in prison with all but eighteen months suspended and three years of probation); *State v. St. Louis*, 2008 ME 101, ¶¶ 2-5, 951 A.2d 81 (sentence of ten years in prison, with all but three and one-half years suspended, with six years of probation). However, those cases involve passenger automobiles, not a tractor trailer "missile" as the court here described. *Lowe*, 2015 ME 124, ¶¶ 2-7, 15, 124 A.3d 156; *St. Louis*, 2008 ME 101, ¶¶ 2-5, 951 A.2d 81.

In any event, we do not need to look at comparable sentences absent an inference of gross disproportionality. *See State v. Ward*, 2011 ME 74, ¶ 20 n.5, 21 A.3d 1033. The facts here do not give rise to an inference of gross disproportionality, so we need not compare Weddle's sentence to the sentences imposed in *Lowe* and *St. Louis*.

A.2d 14. The surrounding facts and circumstances related to Weddle's conduct support the conclusion that the sentence was not barbarous: Weddle should not have been driving a large, fully-loaded tractor trailer, but he did so, traveling at speeds twenty to thirty miles per hour over the posted speed limit, when he was ill, fatigued, and under the influence of prescription drugs and alcohol. *See, e.g.*, *Ward*, 2011 ME 74, ¶ 20, 21 A.3d 1033 (observing that when the manner in which a crime occurred is such that the Legislature could not have envisioned a much worse scenario for the commission of the offense, imposition of the maximum allowable sentence for such conduct "is not the rare, extreme, or shocking case that would offend either the Eighth Amendment or article I, section 9" of the Maine Constitution (quotation marks omitted)).

## B.      Propriety of the Sentence

[¶15]  Weddle next challenges the propriety of the sentence. "We review the sentencing court's determination of the basic sentence de novo for misapplication of legal principles and its determination of the maximum sentence [and the final sentence] for abuse of discretion." *State v. Chase*, 2023 ME 32, ¶ 28, 294 A.3d 154 (alteration and quotation marks omitted).

[¶16]  A court is bound by the process and factors prescribed in 17-A M.R.S. § 1252-C when sentencing a person convicted of a felony. *See State v.*

*Hewey*, 622 A.2d 1151, 1154-55 (Me. 1993). The *Hewey* analysis consists of three steps: (1) "determin[ing] a basic term of imprisonment by considering the particular nature and seriousness of the offense as committed by the offender"; (2) "determin[ing] the maximum period of imprisonment to be imposed by considering all other relevant sentencing factors, both aggravating and mitigating, appropriate to that case"; and (3) "determin[ing] what portion, if any, of the maximum period of imprisonment should be suspended." 17-A M.R.S. § 1252-C.

[¶17]  Contrary to Weddle's arguments, the sentence imposed by the court is not excessively harsh. At the sentencing hearing, the court conducted a sentencing analysis following the statutory procedure.[10]  The court considered both aggravating and mitigating factors in setting the maximum sentence at thirty years. As a serious aggravating factor, the court considered Weddle's criminal history—which included twelve OUIs and eleven speeding violations, multiple license suspensions, and other rules violations. As the court noted, Weddle should not have been driving any vehicle, let alone a commercial vehicle.

---

[10] Weddle does not appear to challenge his basic sentence for a misapplication of principle.

12

[¶18] The court misapplied no legal principles in setting the maximum sentence; although the court considered Weddle's letter of remorse and work history as mitigating factors, his criminal history, the impact on victims, and the need to protect the public manifestly demonstrate that a maximum sentence of thirty years is not excessive. The court carefully weighed the aggravating and mitigating circumstances of Weddle's case as required by section 1252-C(2) and did not abuse its discretion. *See, e.g.*, *State v. Gatson*, 2021 ME 25, ¶¶ 36-37, 250 A.3d 137.

[¶19] The court then considered the appropriateness of suspending a portion of the sentence and placing Weddle on probation pursuant to section 1252-C(3). Although the court had doubts about Weddle's prospects for rehabilitation given his lengthy criminal record, it ultimately decided that a long period of supervision for Weddle after his release would be important for him, *see State v. Black*, 2007 ME 19, ¶ 14, 914 A.2d 723, and serve to protect the public, *see State v. Dalli*, 2010 ME 113, ¶ 14, 8 A.3d 632. The resulting final sentence was reasonable and conformed to the applicable sentencing factors, and was therefore not an abuse of discretion.

The entry is:

Judgment affirmed.

Michelle R. King, Esq. (orally), Irwin & Morris, Portland, for appellant Randall J. Weddle

Aaron M. Frey, Attorney General, and Jeffrey Baroody, Asst. Atty. Gen. (orally), Office of the Attorney General, Augusta, for appellee State of Maine

Knox County Unified Criminal Docket docket number CR-2016-474
FOR CLERK REFERENCE ONLY