MAINE SUPREME JUDICIAL COURT                    Reporter of Decisions
Decision:    2016 ME 176
Docket:      Pen-15-563
Argued:      September 15, 2016
Decided:     December 1, 2016

Panel:       SAUFLEY, C.J., and ALEXANDER, MEAD, GORMAN, JABAR, HJELM, and HUMPHREY, JJ.

STATE OF MAINE

v.

RICHARD J. WATSON

JABAR, J.

[¶1]  Richard J. Watson appeals from a judgment of conviction of two counts of gross sexual assault (Class A), 17-A M.R.S. § 253(1)(C) (2015), one count of unlawful sexual contact (Class A), 17-A M.R.S. § 255-A(1)(F-1) (2015), and one count of visual sexual aggression against a child (Class C), 17-A M.R.S. § 256(1)(B) (2015), entered in the Unified Criminal Docket (Penobscot County, *Lucy, J.*) following a jury trial.  Watson contends on appeal that the trial court erred by admitting testimony of the victim's aunt and grandmother concerning the victim's state of mind.  We disagree and affirm Watson's conviction.

## I. BACKGROUND

[¶2]  The evidence at trial established, without dispute, that the victim was born in November of 2003 and is Watson's biological daughter.  On August 4, 2014, when the victim was ten years old, Watson told her that he would get her a phone if she had sex with him.  The victim said yes because she wanted a phone, and Watson exposed his genitals to her and touched his genitals to her genitals.  The following day, Watson bought her a phone.  On a separate occasion later that summer, Watson performed oral sex on his daughter and penetrated her genitals with his finger.

[¶3]  Approximately one month after the first incident occurred, the victim reported the incidents to two family members: her aunt and her grandmother.[1]  The victim testified that she had promised her father she would not report the incidents because he told her he "could get in a lot of trouble," and that "I just felt guilty 'cause I felt like it's my fault because I said yes."  The prosecutor asked, "What do you mean you felt guilty because you said yes?"  "I felt guilty," the victim replied, "because . . . I said yes to the whole phone thing . . . because I really wanted a phone."  When the prosecutor asked the victim to describe her initial report to her aunt, the victim testified that

---

[1]  The woman identified as the victim's "aunt" testified that she is the long-term partner of the victim's uncle, and the victim identified this woman as her "[a]untie."

she told her aunt that she felt "really guilty" because of what had happened. Watson did not object to this exchange.

[¶4]  The victim's aunt, permitted to provide the evidence under the "first complaint rule," *see State v. Fahnley*, 2015 ME 82, ¶¶ 19-26, 119 A.3d 727, testified that the victim told her on the afternoon of September 7, 2014, about the two incidents.  The prosecutor inquired about the circumstances of that report, asking the aunt, "[W]hat did she say her present feelings were?" "Guilty," the aunt replied, "That was the—the big one.  She said it many times." Watson objected, asserting that the victim's statement was inadmissible hearsay.  At sidebar, the prosecutor asserted that the statement was "being offered as a present sense impression."  The court did not explicitly overrule or sustain the objection, but allowed the prosecutor to continue the line of questioning.

[¶5]  The victim's grandmother testified that the victim was living with her during the summer of 2014, and returned home from her last visit with Watson on September 6 or 7, 2014.  On direct examination, the prosecutor did not ask the grandmother about any statements the victim made to her about being abused.   On cross-examination, Watson's counsel asked the grandmother about the details of what she had reported to the police.  During

his redirect examination, the prosecutor asked the grandmother to explain "the circumstances" of when and how the victim had reported the assaults to her. Watson did not object to the question, but did object to the grandmother's answer. The court overruled the objection, noting that the grandmother had already sufficiently explained the "circumstances," but also explaining that she would not be permitted to testify as to the actual disclosure. The prosecutor then asked the victim's grandmother whether the victim had indicated "at that point in time how she . . . felt." Watson objected without specifying the basis of the objection, and the court overruled it. The grandmother then answered, "Yes. She said she was feeling guilty."

[¶6] After the State rested its case, Watson moved for a judgment of acquittal, which the court denied. At Watson's request, the court admitted into evidence a video recording and transcript of the victim's September 2014 police interview, showing the victim explaining to the examining officer that she had promised Watson she would not report the incidents, but that she had "felt too guilty" and decided to report them. Other portions of the police interview supported Watson's theory that the victim had fabricated the allegations in order to prevent him from obtaining custody of her. During the interview, the officer told the victim that she had done the right thing by

reporting the incidents, and the victim replied, "So, I won't get taken away from my grandparents?"

[¶7]  In his closing argument to the jury, the prosecutor asked, "[W]hat was it that stuck in your mind about what [the victim] said?  [The victim] said she felt guilty. . . .  Remember that word?  Guilty."  The prosecutor also emphasized, "This young [victim] told the police, she told her [aunt], she told you, she felt guilty."  Watson did not object to these remarks.

[¶8]  On July 24, 2015, the jury delivered a guilty verdict on all four counts.  On October 26, 2015, the court entered a judgment on the verdict.  For each of the gross sexual assault convictions, the court sentenced Watson to twenty-seven years in prison followed by twenty years of supervised release, with the sentences on all charges to run concurrently.  The court also sentenced Watson to twenty years in prison for the unlawful sexual contact conviction, and to five years in prison for the visual sexual aggression conviction, ordering that those sentences be served concurrently with each other and with the twenty-seven-year sentences imposed on the gross sexual assault convictions.  Watson timely appealed.  *See* M.R. App. P. 2(b)(2).

## II. DISCUSSION

[¶9]  The sole issue presented by this appeal is whether the trial court committed reversible error by admitting the testimony of the victim's aunt and the victim's grandmother that the victim expressed feelings of guilt when she reported the sexual incidents to them.  Watson argues that the victim's expressions of guilt to her aunt and grandmother do not fall within the exception to the rule against hearsay for present sense impressions, and that the court therefore erred by admitting the testimony.[2]  *See* M.R. Evid. 803(1).  Nor, Watson contends, do the out-of-court statements meet the exception to the hearsay rule for then-existing mental, emotional, or physical conditions because such statements are not admissible to prove whether a crime actually occurred.  *See* M.R. Evid. 803(3).

[¶10]  Generally, we review a trial court's decision to admit or exclude alleged hearsay evidence for an abuse of discretion.  *State v. Guyette*, 2012 ME 9, ¶ 11, 36 A.3d 916.  If a court's ruling is proper under the law, however, we may affirm a judgment on grounds other than those stated by the trial court.

---

[2]  Watson did not state a specific ground when he objected to the prosecutor's examination of the victim's grandmother, but the basis of his objection was apparent from the context—i.e., that Watson was objecting to the grandmother's testimony for the same reason that he objected to the aunt's testimony regarding the victim's expression of guilt.  *See* M.R. Evid. 103(a)(1) ("A party may claim error in a ruling to admit . . . evidence only if . . . [the] party, on the record . . . [t]imely objects . . . and [s]tates the specific ground, unless it was apparent from the context . . . .").

*State v. Flint*, 2011 ME 20, ¶ 10, 12 A.3d 54.  Although we agree with Watson that the out-of-court statements concerning the victim's feelings of guilt do not fall within the exception to the hearsay rule pursuant to M.R. Evid. 803(1) for present sense impressions, we conclude that the statements meet the exception for a declarant's then-existing state of mind pursuant to M.R. Evid. 803(3).

[¶11]  A statement of then-existing mental, emotional, or physical condition is "[a] statement of the declarant's then-existing state of mind (such as motive, intent, or plan) or emotional, sensory, or physical condition (such as mental feeling, pain, or bodily health)."  M.R. Evid. 803(3).  Such statements are admissible only to establish the declarant's state of mind at the time the statements were made.  *Id.*; *see also United States v. Cianci*, 378 F.3d 71, 106 (1st Cir. 2004) (a Rule 803(3) statement is "not admissible in order to show what [the declarant] might have done or not done on other occasions not proximate to the time the statement was uttered"); *United States v. DeSimone*, 488 F.3d 561, 571 (1st Cir. 2007) ("To be admissible under this exception, a declaration, among other things, must mirror a state of mind, which, in light of all the circumstances, including proximity in time, is reasonably likely to have been the same condition existing at the material time." (citation and quotation

marks omitted)).  The exception "applies where the declarant's . . . mental state at the time the statement was made is relevant to an issue in the case." *State v. O'Rourke*, 2001 ME 163, ¶ 22 n.2, 792 A.2d 262 (citing Field & Murray, *Maine Evidence* § 803.3 (2000 ed.)).

[¶12]  For several reasons, the victim's statements to her aunt and grandmother meet the requirements of the hearsay exception for a declarant's then-existing state of mind.  First, the victim's statements that she felt guilty, as reported by her aunt and grandmother, clearly describe the victim's emotional condition or mental feeling.  M.R. Evid. 803(3).  The victim's aunt responded to the prosecutor's question, "[W]hat did she say her present feelings were?" by replying that the victim felt "[g]uilty."  The victim's grandmother similarly testified that the victim was "feeling guilty."  These statements described how the victim felt at the time she made the reports to her relatives.

[¶13]  Next, the statements are relevant because they address the timing of the victim's disclosure, indicating why she was reluctant to report Watson's acts.  During her police interview, the victim said that she had promised Watson she would not tell anyone what he had done, but she "'felt too guilty and did.'"  In an attempt to undermine the victim's credibility,

Watson's case relied in part upon the victim's reticence to report the abuse. He questioned the victim during cross-examination about the dates on which she had reported the incidents to her relatives to call into question the timing of the incidents and the victim's reports of them, and asserted during his closing argument that "'the timing of [her reports] is really hard to ignore.'" The statements by the victim's aunt and grandmother are corroborative of the victim's initial reluctance to report what had happened and also rebut the implication that she fabricated her story.

[¶14]  Additionally, unlike previous cases in which we have held that a victim's out-of-court statements were inadmissible hearsay because they referenced the conduct of the accused, here, the victim's statements described only her own feelings.  *See State v. Williams*, 395 A.2d 1158, 1164 (Me. 1978) (holding that a victim's out-of-court statement that she was scared because an assailant had been chasing her was inadmissible under Rule 803(3) because her statement was "tantamount to remembering the prior conduct of [the assailant] threatening her with harm").  The victim's out-of-court statements in this case, as presented by her relatives' testimony, recounted her then-existing emotional state and nothing more.  Neither her aunt nor her grandmother testified to the content of those conversations other than the

victim relating her guilty state of mind. Furthermore, the victim herself testified, without objection, that she had told her aunt that she felt "really guilty" because of what had happened. Also, the videotape of the victim's interview offered by Watson contained a statement by the victim that she had "felt too guilty" after reflecting upon what had occurred between her and Watson, and therefore decided to report Watson to her relatives and the police.

[¶15] The court did not abuse its discretion by allowing the aunt and the grandmother to testify about the victim's expression of guilt.

The entry is:

> Judgment affirmed.

**On the briefs:**

> Jamesa J. Drake, Esq., Drake Law, LLC, Auburn, for appellant Richard J. Watson

> R. Christopher Almy, District Attorney, and Tracy Collins, Asst. Dist. Atty., Prosecutorial District V, Bangor, for appellee State of Maine

**At oral argument:**

> Jamesa J. Drake, Esq., for appellant Richard J. Watson

> Tracy Collins, Asst. Dist. Atty., for appellee State of Maine

Penobscot County Unified Criminal Docket docket number CR-2014-3368

FOR CLERK REFERENCE ONLY